<u>**United States District Court**</u>
<u>**District of Minnesota**</u>

RECEIVED
BY MAIL

NOV 02 2017

| | |
|---|---|
| Kenneth Steven Daywitt, Merel Evans Bishop, Bet Elohim Congregation,<br>    Plaintiffs,<br><br>v.<br><br>Chad Mesojedec, Karen Dalluge, Jessica Geil, Sandra L. Bryant, Nicole Smith, Jordan Goodman, Ryan Hulke, Stacey Sonnek, and all members of the Spiritual Practices Advisory Committee (SPAC), in their Individual and Official Capacity;<br>    Defendants. | CLERK, U.S. DISTRICT COURT<br>ST. PAUL, MN<br>**Court File No. #17-CV-** 50 15   JNE / LIB<br><br>**COMPLAINT FOR VIOLATIONs OF RELIGIOUS RIGHTS, EQUAL PROTECTION, AND RELIGIOUS LAND USE INSTITUTIONALIZED PERSONS ACT.**<br>**U.S.C. §§1983, 1985, and RLUIPA** |

## **INTRODUCTION**

1.  This is an action on behalf of Plaintiffs who are civilly committed to the

    Minnesota Sex Offender Program against Defendants for money damages,

    injunctive and declaratory relief for violations of Plaintiffs' First Amendment and

SCANNED
NOV 0 3 2017
U.S. DISTRICT COURT ST. PAUL

Fourteenth Amendment Substantive Due Process, and Equal Protection, RLUIPA and the Minnesota Constitution Article 1§16.

2. It is alleged that the Defendants unlawfully discriminated against Plaintiffs under RLUIPA, and First and Fourteenth Amendment when they refused to afford Plaintiffs the right to observe religious obligations specifically related to building a Sukkah, which is a requirement for Jews to spend time in and eat meals in for the 8 days of the festival Holiday Sukkot.

## JURISDICTION

3. Jurisdiction is based upon 28 U.S.C. §§1331 and 1343, and on the pendent jurisdiction of this court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367.

## VENUE

4. This court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiffs' cause of action occurred within the State of Minnesota.

# PARTIES

## I.     Plaintiffs

5.  Plaintiff Kenneth Steven Daywitt is civilly committed to the MSOP in the care and custody of the Minnesota Department of Human Services for an indefinite period of time. Plaintiff adheres to Orthodox Judaism. He has been and continues to be injured by the acts and omissions of Defendants.

6.  Plaintiff Merel Evans Bishop is civilly committed to the care and custody of the Minnesota Department of Human Services for an indefinite period of time. Plaintiff adheres to Orthodox Judaism. He has been and continues to be injured by the acts and omissions of Defendants.

7.  Plaintiff Bet Elohim is the name of the body of believers in which members of the Jewish community at MSOP-Moose Lake belong to.

## II.    Defendants

8.  Defendant Chad Mesojedec is the Rehab Therapies Director who sits on the SPAC committee and is responsible for supervising the spiritual areas. Defendant Mesojedec in his official and individual capacity carried out and retained practices which hindered Plaintiffs from practicing/participating in their religious obligation therefore making him liable for injuries suffered by Plaintiffs.

9.  Defendant Karen Dalluge is the Rehab Therapies Director who sits on the SPAC committee and is responsible for supervising the spiritual areas in St. Peter. Defendant Dalluge in her official and individual capacity carried out and retained

practices which hindered Plaintiffs from practicing/participating in their religious obligation therefore making her liable for injuries suffered by Plaintiffs.

10. Defendant Sandra Bryant is the Volunteer Services Coordinator at Moose lake, and is responsible for coordinating religious services at Moose Lake, she also is a committee member on SPAC. Defendant Bryant in her official and individual capacity carried out and retained practices which hindered Plaintiffs from practicing/participating in their religious obligation therefore making her liable for injuries suffered by Plaintiffs.

11. Defendant Nicole Smith is the Volunteer Services Coordinator at St. Peter, and is responsible for coordinating religious services at St. Peter amongst other duties within her facility, she also is a committee member on SPAC. Defendant Smith in her official and individual capacity carried out and retained practices which hindered Plaintiffs from practicing/participating in their religious obligation therefore making her liable for injuries suffered by Plaintiffs.

12. Defendant Stacey Sonnek is a member of the SPAC in St. Peter. Defendant Sonnek in her official and individual capacity carried out and retained practices which hindered Plaintiffs from practicing/participating in their religious obligation therefore making him liable for injuries suffered by Plaintiffs.

13. Defendant Jordan Goodman is the Security Program Manager at MSOP-ML he is responsible for the day to day security operations at the facility, he also sits on the SPAC as a member. Goodman in his official and individual capacity carried out and retained practices which hindered Plaintiffs from practicing/participating in

their religious obligation therefore making him liable for injuries suffered by Plaintiffs.

14. Defendant Ryan Hulke is a member of the SPAC in St. Peter.  Defendant Hulke in his official and individual capacity carried out and retained practices which hindered Plaintiffs from practicing/participating in their religious obligation therefore making him liable for injuries suffered by Plaintiffs.

15. Defendant Jessica Geil is the Legal Department Director who has a Juris doctorate who sits on the SPAC as legal representation to determine if there are any legality issues.  Defendant Geil in her official and individual capacity carried out and retained practices which hindered Plaintiffs from practicing/participating in their religious obligation therefore making her liable for injuries suffered by Plaintiffs.

16. Defendant SPAC is an inter-body of members who work at MSOP from various departments including clinical, security, spiritual/volunteer services, administration and legal. This is comprised of members from both MSOP-Moose Lake and St. Peter.  SPAC and its members in its official capacity carried out and retained practices which hindered Plaintiffs from practicing/participating in their religious obligation therefore making them liable for injuries suffered by Plaintiffs.

17. In all respects material to this action, all Defendants acted under the color of law and under the color of their authority as officers and employees of the DHS.

18. In all respects material to this action, all Defendants acted within the scope of their

    employment with the DHS, but exceeded the legitimate scope of their official

    capacity especially after these violations were brought to their attention.

# **ALLEGATIONS**

19. Plaintiffs bring this action on behalf of himself, seeking equitable and injunctive

    relief on his behalf ("Injunctive"):

> Patient is currently civilly committed in the Minnesota Sex Offender
> Program as Sexually Dangerous Persons ("SDP") pursuant to Minn. Stat. §
> 253D having sustained injunctive damages through the actions and
> omissions of Defendants in their individual capacity.

20. Plaintiffs also bring this action on behalf of themselves seeking compensatory,
    actual, or nominal damages for the constitutional, statutory, and common law
    claims on their behalf ("Damages"):

> Patient is currently civilly committed to the Minnesota Sex Offender
> Program as a Sexually Dangerous Persons ("SDP") pursuant to Minn. Stat.
> § 253D having sustained compensatory, actual or nominal damages through
> the actions and omissions of Defendants.

21. Plaintiffs' claims are typical claims. Plaintiffs are affected by Defendants'

    wrongful conduct and decisions.

22. Plaintiffs' claims arise out of the same common course of conduct giving rise to

    the claims. Plaintiffs' interests are equivalent with that of the common citizen of

    the United States of America, and not antagonistic to the Defendants. The

    questions of law and fact common to predominate over any questions affecting

only individual members, including legal and factual issues relating to liability and damages.

23. Plaintiffs haves suffered harm and actual or nominal damages as a result of Defendants' wrongful conduct as alleged herein. Absent representative action, Plaintiffs will continue to suffer, thereby allowing Defendants' violation of law to proceed without remedy.

## **FACTS**

24. Plaintiffs requested through the Volunteer Services Coordinator to take to the next SPAC meeting the possibility of building a Sukkah for the Sukkot holiday.

25. Religious volunteer Rabbi Gershom who comes to the facility and also goes to the Federal Prison in Sandstone, supported and wrote the proposal which went to the SPAC meeting, stating the logistics of what it is etc.

26. Jewish Law commands that a Sukkah be built immediately after the end of Yom Kippur, even if it were to fall on a Shabbat. Every person who adheres to Judaism is commanded to personally occupy himself with building the Sukkah and putting on the covering.[1]

27. Jewish Law commands that "a Jewish person is "to dwell" in the Sukkah is that the Torah tells us to "dwell" in a sukkah for 7 days just as one dwells in ones'

---

[1] See www.yonanewman.org/kizzur/kizzur134.html  part134:1

house the rest of the year…" it also states "that one must eat, drink, study, relax

and sleep in the sukkah."[2]

28. Jewish law says eating in the sukkah the first and second night is an obligation.

29. Defendants stated one of the main reasons for not allowing Plaintiffs to build the

sukkah is because of the fear of possibly using the poles to get over the fence. The

structure was to be built out of eight foot PVC pipe with opaque plastic around the

three sides.

30. Plaintiffs are adherents of the Orthodox Jewish Faith.

31. The importance of this festival holiday is individual responsibility which marks

much of Jewish observances, so that the synagogue—far from being the focus of

observance—shares with the home and the workaday world the opportunities for

divine-human encounter. The table blessings, Kiddush (the "sanctification" of the

Sabbath and festivals), the erection of the booth (sukkah) for Sukkot (the Feast of

Tabernacles), the Seder (the festive Passover meal) with its symbols and narration

of the Exodus, and the lighting of the lights during the eight days of Hanukkah

(the Feast of Dedication) are all the obligation of the individual and the family and

have their place in the home.

32. The reason for this is Jews are to reside in booths—walled structures covered with

thatched roofs—for the duration of the festival; in practice, most observant Jews

take their meals in the sukkah.

---

[2] See www.yonanewman.org/kizzur/kizzur135.html  Part 135:1, 135:3-4

33. Sukkot is an eight-day Jewish festival celebrated in September or October of each year, in which Jewish practitioners eat and pray inside a sukkah booth which is placed outdoors, the booth has only three sides.

34. Sukkot is one of the holidays observed by followers of Judaism. Sukkot is a Jewish autumn festival of double thanksgiving (one of the three Pilgrim festivals of the Old Testament) that begins on the 15th Day of Tishri (in September or October), five days after Yom Kippur, the Day of Atonement. During the Sukkot holiday, observant Jews take their meals and/or reside inside a Sukkah, which is a booth or tent comprised of a three walled structure, a roof and anchored into the ground, the structure would be placed outside the accessible area for clients **unless** you are granted permission for using the designated area.

35. The numerous regulations governing the sukkah constitute the major portion of the treatment of Sukkot in the codes of Jewish law. The daily Sukkot liturgy includes the recitation of Hallel (Psalms, 113–118), public readings from the Torah, the Musaf service, and the circumambulation of the synagogue dais.

36. Unlike the Native American Sweat-lodge, the Sukkah is intended to be temporary and can easily be torn apart and does not protect against all forms of weather. However, Defendants allow the Natives to use their Sweat-lodge which is completely enclosed making them not visible inside and clients are practically nude while in the sweat-lodge. However, there is no security concern related to this concerning the Native Americans.

37. The Native American sweat-lodge is comprised of poles which are ten-fifteen feet in length, which could be used for purposes of escape as well.

38. Plaintiffs maintain that denial of a Sukkot Booth to the Jewish clients, but allowing the Native American clients to use a sweat-lodge is a denial of equal protection.  Plaintiffs are similarly situated to Native American clients and that they are treated differently by Defendants regarding the use of a Sukkot Booth compared to the use of a sweat-lodge.

39. Defendants have failed to provide a rational basis for the dissimilar treatment.

40. The booth has only three sides, allowing security counselors and other staff to view the clients sitting in the booth from at least one side in addition, the poles are anchored into the ground.

41. As the sukkah is denied, there are no alternative means to exercise that aspect of religious faith.

42. Plaintiffs and the Jewish group have suffered differential treatment than other religious groups here in the facility.

43. Jewish group when requesting to do any type of special activities such as blowing the shofar for Selichot, doing lulav, esrog, prayers, etc. must all be approved by administration.

44. The Jewish group has different standards applied to them; when the Jews wanted to wear their kippah, they were forced to file a lawsuit, when the Jews wanted to wear their suit coats they had to file a lawsuit, when the Jews needed adequate kosher meals they had to file a lawsuit, when the Jews wanted to be excused for

holidays from groups/modules they had to file a lawsuit, however, when Christian

groups wanted to wear a shirt with a cross on it, no issue; when Christians wanted

to have a bible study it was no issue, when the Wiccans or Asatru wanted to have a

fire for their faith practice dictates, they simply write a request to spiritual services

personnel and it is granted.

45. Anti-Semitic behaviors seem to be common when dealing with the Jewish group in the MSOP.

46. Based on the above factual information and belief, Defendants maintain a custom and practice of discrimination against Plaintiffs based on their personal beliefs and wants and hypothetical security concerns that a group of men would use the poles for an attempt at escape.

47. As a result of Defendants discriminatory actions, Plaintiffs' were denied the right to participate in required practices as dictated by Plaintiffs faith without any justified reason.

48. As a result of Defendants discriminatory actions, Plaintiffs suffered a diminished quality and enjoyment of life, and were not able to perform the obligatory command to build a sukkah and reside in it.

49. As a result of Defendants discriminatory actions, Plaintiffs suffered emotional trauma, anguish, and distress by not being afforded the right to carry out the Mitzvah (command) of residing in the Sukkah.

# CLAIMS

## Count 1

**Denial of Plaintiffs First Amendment Rights To Practice Religion Freely Without Interference or Consequence, RLUIPA and the Minnesota Constitution Article 1§16**

50. Plaintiffs incorporate all previous allegations as if fully set forth herein.

51. The First Amendment guarantees that "[n]o State shall... deprive any person of religious freedom that infringes upon his right to worship or act within the bounds of his religion.

52. RLUIPA equates to the standard clause of the First Amendment.

53. Based on the determination of Defendants to not allow Plaintiffs the ability to freely practice their religion therefore depriving the opportunity to practice their religion.

54. The Minnesota Constitution Article 1§16 gives similar rights as the First Amendment but expounds upon them stating: **"The right of every man to worship God according to the dictates of his own conscience shall never be infringed . . . nor shall any control of or interference with the rights of conscience be permitted . . . ;** but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the state." (Emphasis added) This language

is of a distinctively stronger character than the federal counterpart because it

precludes even an *infringement* on or an *interference* with religious freedom.

55. Defendants made a determination not based on sound judgment to determine that

Plaintiffs should not have an opportunity to demonstrate and practice their religion

according to the dictates of their faith.

56. Unless relief is granted Plaintiffs will continue to be injured as a direct and

proximate result of Defendants acts and omissions specifically set forth above.

## COUNT 2
## Denial of Plaintiffs' Rights To Substantive Due Process And Equal Protection As Afforded Under The Fourteenth Amendment Of The United States Constitution

57. Plaintiffs incorporate all previous allegations as if fully set forth herein.

58. The Fourteenth Amendment guarantees that "[n]o State shall ... deprive any

person of life, liberty, or property, without due process of law." U.S. Const. amend.

XIV, § 1.  Plaintiffs bring this Fourteenth Amendment claim pursuant to 42 U.S.C. §

1983.

59. Based on the above factual allegations, Defendants unlawfully discriminated

against Plaintiffs by not affording them similar treatment as other client spiritual

groups such as the Native Americans who use a sweat-lodge which is a permanent

structure, whereas the Sukkah would be a temporary structure.

60. As a result of these violations, Plaintiffs suffered damages as foresaid.

61. Based on the determination of Defendants to not allow Plaintiffs the ability to fully practice their religious beliefs they have been treated unequally and have therefore not been given the opportunity fully practice their faith.

62. Defendants in their individual and official capacities have made a determination not based on sound judgment, to violate the religious rights of the Plaintiffs by denying them the right to participate in requirements of their faith as informed by the outside resource person.  Defendants denied Plaintiffs of their religious convictions as assigned by their faith.

63. Unless relief is granted Plaintiffs will continue to be injured as a direct and proximate result of Defendants acts and omissions specifically set forth above.

## COUNT 3
### Request For Compensatory, Injunctive And Declaratory Relief

64. Plaintiffs incorporate all previous allegations as if fully set forth herein.

65. Based on the above factual allegations, Defendants maintain a custom and/or practice of discrimination against Plaintiffs religious beliefs by not allowing them to participate in activities that of which are part of the dictates of their faith.

66. Defendants failed to make reasonable modifications in their polices, practices and procedures to ensure that Plaintiffs are allowed equal access and opportunities as other clients and citizens of the United States.

67. Plaintiffs requests a permanent injunction, ordering Defendants as follows:

a. To allow Plaintiffs the opportunity to build a sukkah as is the requirement of their faith, and be allowed to reside for portions of the day/eat in it all three meals.

b. To afford Plaintiffs the right to possess in their rooms: Kiddush Cups, 2 Electric Candles each, a Shofar, and other Judaica as necessary to practice their faith.

c. Allow for Streaming from Congregation Beth El in St. Louis Park, MN with an alternative synagogue that also does streaming, bi-weekly on Shabbat and Kabbalat Shabbat services on Friday nights.

d. Pay Plaintiffs in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) for emotional Trauma, anguish and distress.

e. Declare the practices of MSOP's denial of religious dictates unconstitutional, Ordering a *Special Master*, who adheres to the Orthodox Jewish School of Thought whom MSOP must get everything approved by prior to denial.

f. The right for Jewish spiritual group to purchase a Yemenite Shofar approx. 22 inches in length to be used in the spiritual/religious area.


## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs prays for relief as follows:**

a. Issue an order granting Plaintiffs judgment against Defendants, finding Defendants violated Plaintiffs sincerely held religious beliefs in violation of the First Amendment, Substantive Due Process and Equal Protection under the Fourteenth

Amendment of the United States Constitution, RLUIPA, and the Minnesota Constitution Article 1§ 16.

b.  Award of compensatory damages to Plaintiffs against all Defendants, jointly and severely.

c.  Award of punitive damages to Plaintiffs against all Defendants, jointly and severely.

d.  A compensatory, declaratory and permanent injunction, as requested in Count 3 above.

e.  Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFFS HEREBY DEMANDS A JURY TRIAL.**

**Dated: October 30, 2017**

/S/: Kenneth Steven Daywitt
Kenneth Daywitt-Plaintiff Pro se
1111 Highway 73
Moose Lake, MN 55767


/S/: Merel Evans Bishop
Merel Evans Bishop-Plaintiff Pro se
1111 Highway 73
Moose Lake, MN 55767